**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| CHAUNA CRAWLEY, | ) | |
| | ) | |
| BARBARA WOODSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, LLC, | ) | |
| | ) | |
| CAVALRY INVESTMENTS, LLC, | ) | |
| SERVE:    CT Corporation System | ) | |
| 4701 Cox Rd., Ste. 301 | ) | Civil Action No. 3:12cv252 |
| Glen Allen, VA 23060 | ) | |
| | ) | |
| CAVALRY SPV I, LLC, | ) | |
| SERVE:    CT Corporation System | ) | |
| 4701 Cox Rd., Ste. 301 | ) | |
| Glen Allen, VA 23060 | ) | |
| | ) | |
| CAVALRY SPV II, LLC, | ) | |
| SERVE:    The Corporation Trust Company | ) | |
| Corporation Trust Center | ) | |
| 1209 Orange Street | ) | |
| Wilmington, DE 19801 | ) | |
| | ) | |
| Defendants. | ) | |

<u>**FIRST AMENDED COMPLAINT**</u>

COME NOW the Plaintiffs, Chauna Crawley ("Crawley" or "Plaintiff") and Barbara Woodson ("Woodson" or "Plaintiff"), by counsel, and as for their First Amended Complaint against the Defendants, they allege as follows:

1.      This is an action for actual, statutory, treble and punitive damages, declaratory and injunctive relief, costs, and attorneys' fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §1961, *et seq.* ("RICO") for the Defendants' abuse of process.

## JURISDICTION

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1331 and § 1367.

## PARTIES

3.      Plaintiffs are natural persons who reside in the Commonwealth of Virginia and at all times relevant hereto were each a "consumer" as that term is defined by the FDCPA.

4.      Defendant Cavalry Investments, LLC ("Cavalry" or "Defendant") is a Delaware limited liability company with its headquarters and principal place of business located in Valhalla, New York.  It regularly conducts business in the Commonwealth of Virginia.

5.      Defendant Cavalry Portfolio Services, LLC, ("CPS" or "Defendant"), is a Delaware limited liability company with its headquarters and principal place of business located in Valhalla, New York.   It regularly collects debts from consumers located across the Commonwealth of Virginia.

6.      Defendant Cavalry SPV I, LLC ("SPV I" or "Defendant") is a Delaware limited liability company with its headquarters and principal place of business located in Valhalla, New York.  It regularly collects debts from consumers located across the Commonwealth of Virginia.

7.      Cavalry SPV II ("SPV II" or "Defendant") is a Delaware limited liability company with its headquarters and principal place of business located in Valhalla, New York.  It regularly collects debts from consumers located across the Commonwealth of Virginia.

## STATEMENT OF FACTS

8.      Defendants operate as a debt buying enterprise.  Cavalry is not simply a parent holding company of CPS, SPV I, and SPV II.  Instead, all four Defendants operate as parts of a

single business operation. Cavalry provides management and decision-making, SPV I and SPV II exist as employee-less paper entities that hold title to the enterprise's purchased debt portfolios and CPS operates as the front for contact with the targeted debtor-consumers, calling itself the "servicer" of the Defendants' collection accounts.

9.      Cavalry does not operate independent of CPS, SPV I, and SPV II. It does not have a separate office, separate management or separate business and income. Instead, they are all interrelated and inseparably operate as a single business operation.

10.      In fact, Defendants' webpage states, "Cavalry SPV I, LLC is one of Cavalry Investments, LLC's three affiliates, Cavalry SPV II, LLC and Cavalry Portfolio Services, LLC are the remaining two affiliates. Each affiliate provides support to the key business objectives." http://www.cavalryspvi.com/Affiliates/affiliates.htm

11.      The majority of "officers" of Cavalry or CPS are also officers or directors of other Cavalry subsidiaries.

12.      Cavalry has little or no income that is not directly derived from CPS, SPV I, and SPV II.

13.      SPV I and SPV II do not have any employees. Instead, they are shell entities used by Cavalry to purchase and hold technical ownership of the debt portfolios Cavalry purchases. Cavalry and CPS hold all of the company's personnel and active resources. SPV I and SPV II purchase the debt portfolios, and then CPS duns the consumer debtor "on behalf" of SPV I and SPV II.

14.      The single and principal business purpose of each Defendant is the collection of debts, and each Defendant is a debt collector as that term is defined at 15 U.S.C. § 1692a(6).

3

Each Defendant uses various instrumentalities of interstate commerce and the mails in the business for which the principal purpose is the collection of any debts.

15.     For example, and without limitation, Cavalry engages in interstate commerce by shopping for, pricing and negotiating to purchase large portfolios of consumer debt from third parties creditors – often charged off credit card debt from credit card companies.   All of these steps are taken by individuals who are employed by Cavalry.  They are accomplished for the sole purpose of collecting these defaulted debts from consumers. The single way that Cavalry makes money from these accounts is collecting on them from consumers.

16.     Similarly, SPV I and SPV II are debt collectors.  They are created for the single purpose of facilitating and causing the collection of the accounts that Cavalry purchases.  Title to the accounts is held in the name of SPV I and SPV II, which is analogous to Cavalry's "filing cabinet" in which it stores the purchased accounts while it tries to collect them from consumers. SPV I and SPV II are the title owners to these Cavalry purchases, and they then become the named "Plaintiff" in the collection actions brought by the Defendants around the country.  Most of their actions require the use of the mails and interstate commerce for the purpose of collecting consumer debts.

17.     CPS, on the other hand, serves as the frontline company that deals directly with targeted consumer debtors. CPS directs the actions of the personnel who interact with the debtors and with the Defendants' third-party collection law firms, allegedly as the agent of SPV I and SPV II.  Again, much of its work and tasks require the use of the mails and interstate commerce for the purpose of collecting consumer debts.  For example, CPS does so by causing lawsuits to be filed across the Commonwealth of Virginia (and the country) on behalf of Defendants SPV I

4

and SPV II.  CPS is primarily responsible for generating the false evidence served upon consumers and submitted to courts in its collection actions.

**Defendants' Debt Buying Operation**

18.     Defendants accomplish their debt-buying operation by purchasing multiple multi-million dollar portfolios of distressed and charged-off consumer debt from original creditors. Many of these debts are credit card accounts.

19.     The personnel and resources used to accomplish and transact these purchases are nearly all those maintained in the name of Cavalry.  Cavalry employees negotiate the deals and purchase the portfolios, regardless as to whether or not Cavalry then titles them in the name of SPV I or SPV II.

20.     When Defendants collectively purchase debt portfolios, such as the portfolios that contained each Plaintiff's account, they do not actually purchase anything other than the theoretical claim of ownership.  There are no notes assigned, and no contracts are transferred. All that Defendants actually purchase is an electronic list of consumers and their last known addresses with an amount the creditor claims to have been owed.  Often the interest rates, dates of birth or social security numbers are not included, and addresses have not been updated.

21.     In fact, though Defendants will often produce what is claimed to be an original cardmember agreement or document containing terms and conditions of a credit card account, these documents are false.  However, creditors who do transfer or make available later the "terms and conditions" or cardmember agreements do not provide Defendants the actual agreement or documents for that specific account.  Instead, the creditors provide, and the Defendants retain, only a generic sample contract, which they later represent to Courts as the genuine contract for that specific consumer account.

5

## Defendants' Fraudulent Conduct

22.    To aid in litigation against consumers, the Defendants have established relationships with many different debt collection law firms in the country who serve less in the capacity as traditional legal counsel, and more as an outsource vendor.  The law firms are paid a contingency percentage of recovery, and they exercise no control over any Defendant nor do they submit to control over their own practices by the Defendants.

23.    Instead the third party law firms are part of Defendants' enterprise to engage in abuse of process and civil conspiracy as a means to collect the purchased accounts from consumers.

24.    Defendants use these third party law firms and the General District Courts in the Commonwealth of Virginia, as well as courts across the country, as a means to collect from consumers in a manner that does not comply with Virginia or federal law.

25.    As an example of one such violation, Defendants submit affidavits with the warrant in debts that they file in the General District Courts that contain numerous material falsehoods. These affidavits misrepresent that the affiant has personal knowledge of the account, that the affiant had reviewed the actual contractual documents regarding the account, or even that such documents existed.

26.    Upon information and belief, the affiants have no such personal knowledge nor do they review the actual contractual documents pertaining to the account in question.

27.    Furthermore, upon information and belief, the claimed affiant is at times not the actual individual who signs the affidavit. Instead, other individuals sign the sworn affidavit, claiming to be the affiant whose name appears on the affidavit.

6

28.     In addition, Defendants attach a "Summary Screen" to the affidavits filed with the Courts in an attempt to mislead the court into the belief that the Summary Screen was part of the affidavit and was reviewed by the affiant.

29.     These fraudulent affidavits and summary screens are then filed with the General District Courts and are mailed to consumers in debt collection communications.

**Defendants' Specific Collection Conduct Regarding Chauna Crawley**

30.     The Defendants allege that a debt owed by Plaintiff Crawley was consigned, placed or otherwise transferred to Defendants for collection.

31.     In an attempt to collect this debt, Defendants filed a Warrant in Debt against Ms. Crawley in New Kent General District Court.

32.     The Defendants submitted a false affidavit along with this Warrant in Debt, misrepresenting that the affiant had personal knowledge of the account and had reviewed the account records.

33.     Additionally, the Defendants also submitted a "Summary Screen" with the Warrant in Debt, representing that the balance owed was comprised of principal only and included no prejudgment interest.

34.     The Defendants mailed a copy of the Warrant in Debt to Ms. Crawley, including copies of the affidavit and the Summary Screen. Neither the affidavit nor the summary screen contained a disclosure that the communication was from a debt collector.

35.     Furthermore, in a collection letter dated November 14, 2011, the Defendants attempted to collect court costs from Plaintiff before they were due, in other words, before a court awarded them.

36.     Upon receipt of the Warrant in Debt and other accompanying documents, Ms. Crawley called the Defendants regarding the debt.

37.     The Defendants informed Ms. Crawley that if she agreed to a payment plan and made the first payment before her court date, they would not take judgment against her and she would not have to attend the court hearing.

38.     Relying on the Defendants' representation, Ms. Crawley made a payment to the Defendants on or about December 2 and did not appear in court on the warrant's return date.

39.     The Defendants did not inform the court of the payment plan between them and Ms. Crawley. Instead, they appeared in court and took a default judgment against her.

40.     Additionally, the Defendants failed to notify the court of Ms. Crawley's payment of $207.65 made in the beginning of December 2011, and instead misrepresented to the Court that Ms. Crawley still owed them the original balance of $1,605.24.

41.     In order to obtain the default judgment, the General District Court relied upon the false collection affidavit and Summary Screen attachment that were presented to the General District Court judge in December 2011, when counsel for the Defendants asked for judgment on the (false) affidavit.

42.     In an attempt to collect on this judgment, the Defendants filed a Suggestion for Summons in Garnishment against Plaintiff Crawley in which they sought to collect judgment costs in the amount of $56.00 and garnishment costs in the amount of $65.00. However, the Warrant in Debt only provided for $56.00 in judgment costs and did not award any garnishment costs.

43.     Virginia law does not provide for garnishment costs in favor of the judgment creditor against the judgment debtor. See VA. CODE § 8.01-511, *et seq*.

8

44.     Therefore, the total amount due on the Suggestion was misrepresented to be more than Ms. Crawley actually owed.

45.     In Virginia, it is a class 1 misdemeanor for a judgment creditor to knowingly give false information in a suggestion for garnishment. VA. CODE § 8.01-511.

46.     Additionally, the Defendants sought to garnish an account containing funds that did not belong to Ms. Crawley, and, as a result of the hold placed on the account, caused Ms. Crawley to incur substantial fees and penalties.

47.     Plaintiff Crawley has suffered actual damages as a result of these illegal collection actions by the Defendants in the form of pecuniary loss, anxiety, emotional distress, fear, frustration, humiliation and embarrassment, amongst other negative emotions.

**Defendants' Specific Collection Conduct Regarding Barbara Woodson**

48.     The Defendants allege that a debt owed by Plaintiff Woodson was consigned, placed or otherwise transferred to Defendants for collection.

49.     In an attempt to collect this debt, Defendants filed a Warrant in Debt against Ms. Woodson in Henrico General District Court.

50.     The Warrant in Debt sought judgment against her in the amount of $1,855.54, with interest set at 6% from the date of judgment until paid, judgment costs of $58.00, and $0.00 in attorney's fees.

51.     The Defendants submitted a false affidavit along with this Warrant in Debt, misrepresenting that the affiant had personal knowledge of the account and had reviewed the account records.

9

52.     The Defendants mailed a copy of the Warrant in Debt to Ms. Woodson, including a copy of the affidavit.  The affidavit did not contain a disclosure that the communication was from a debt collector.

53.     Upon receipt of the Warrant in Debt and accompanying affidavit, Ms. Woodson called the Defendants regarding the debt.

54.     The Defendants informed Ms. Woodson that if she agreed to a payment plan and made an additional immediate payment, they would drop the lawsuit and not seek judgment against her.

55.     In reliance on the Defendants representation that they would drop the lawsuit against her, Ms. Woodson entered into a payment plan with the Defendants whereby she would pay $251.83 on the 28th of each month beginning in February. Additionally, Ms. Woodson made a payment of $1,000.00 in early January.

56.     Thereafter, Ms. Woodson attended the court hearing on January 30, 2012 believing that the case would be dismissed according to the agreement she had entered into with the Defendants.

57.     However, at the hearing the Defendants sought judgment against Ms. Woodson claiming she still owed the original balance of $1,855.54.  The judge refused to enter judgment against her because the Defendants failed to inform the court of her $1,000.00 payment, and instead continued the hearing until April 9, 2012. The judge also stated that Ms. Woodson owed a remaining balance of only $855.54.

58.     The Defendants automatically withdrew $251.83 from Ms. Woodson's bank account for the months of February and March. At the April 9, 2012 court date, Ms. Woodson

was informed that the hearing was continued until June 18, 2012 and that she owed a remaining balance of $351.88.

59.     The Defendants then withdrew $251.83 for the months of April and May. On or about June 15, 2012, Ms. Woodson called the Defendants inquiring why they continued to withdrawal payments from her account. As of that date, Ms. Woodson had paid the Defendants a total sum of $2,007.32, an amount greater than the Defendants represented was due on the loan to both her and the Court.

60.     During that phone call, the Defendants informed Ms. Woodson that she still owed roughly $500.00 for their attorney's fees, and that they would continue withdrawing $251.83 for the months of June and July. Therefore, the Defendants claimed that Ms. Woodson owed them a total sum of $2,510.98, an amount vastly different from the original balance represented to both Ms. Woodson and to the Henrico General District Court.

## COUNT ONE:
## VIOLATION OF 15 U.S.C. § 1692d

61.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

62.     The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d by their actions, which include, but are not limited to, abusing, lying to, and harassing the Plaintiffs.

63.     As a result of the actions taken by the Defendants, Plaintiffs have incurred actual damages.

64.     Plaintiffs are therefore entitled to an award of actual and statutory damages against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

11

## COUNT TWO:
## VIOLATION OF 15 U.S.C. § 1692d(1)

65.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

66.     The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d(1) by their actions, which include, but are not limited to, using criminal means to harm the Plaintiffs.

67.     As a result of the actions taken by the Defendants, which include, but are not limited to, attempting to garnish funds that were not awarded in the underlying judgment, or which were not otherwise proper under Virginia law, the Defendants committed a violation of Virginia Code § 8.01-511, an offense classified as a Class 1 misdemeanor.

68.     Plaintiffs are therefore entitled to an award of actual and statutory damages against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k, as well as VA. CODE § 8.01-271.1.

## COUNT THREE:
## VIOLATION OF 15 U.S.C. § 1692e

69.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

70.     The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e by their actions, which include, but are not limited to, using false, deceptive, or misleading representations or means in connection with the collection of a debt.

71.     As a result of these actions taken by the Defendants, the Plaintiffs have incurred actual damages.

72.     Plaintiffs are therefore entitled to an award of actual and statutory damages

against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT FOUR:
### VIOLATION OF 15 U.S.C. § 1692e(2)

73.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

74.    The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2) by their actions, which include, but are not limited to, falsely representing the amount or legal status of a debt owed.

75.    As a result of these actions taken by the Defendants, Plaintiffs have incurred actual damages.

76.    Plaintiffs are therefore entitled to an award of actual and statutory damages against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT FIVE:
### VIOLATION OF 15 U.S.C. § 1692e(10)

77.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

78.    The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(10) by their actions, which include but are not limited to, using a false representation as a means to collect a debt.

79.    As a result of these actions taken by the Defendants, Plaintiffs have incurred actual damages.

80.    Plaintiffs are therefore entitled to an award of actual and statutory damages

against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT SIX:**
**VIOLATION OF 15 U.S.C. § 1692e(11)**

81.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

82.     The Defendants sent communications to the Plaintiffs that bore the legend "Affidavit of Claim" (hereafter "Affidavit").  They also caused the same to be served upon them by law enforcement.

83.     The Defendants also sent a communication to Plaintiff Crawley that bore the legend "Summary Screen", and which purported to contain information indicating the details of the account.  They also caused the same to be served upon her by law enforcement. They attached this document to the Affidavit to mislead Plaintiff Crawley and the Court into the belief that the Summary Screen was part of the Affidavit.

84.     The Affidavit and the "Summary Screen" each failed to inform the Plaintiffs that the Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose, in violation of 15 U.S.C. § 1692e(11).

85.     As a result of these actions taken by the Defendants, Plaintiffs have incurred actual damages and are therefore entitled to an award of actual and statutory damages against Defendants as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT SEVEN:**
**VIOLATION OF 15 U.S.C. § 1692f**

86.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

14

87.     The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §
1692f by their actions, which include, but are not limited to, using unfair means to collect or to
attempt to collect a debt.

88.     As a result of these actions taken by the Defendants, Plaintiffs have incurred
actual damages.

89.     Plaintiffs are therefore entitled to an award of actual and statutory damages
against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15
U.S.C. § 1692k.

**COUNT EIGHT:**
**VIOLATION OF 15 U.S.C. § 1692f(1)**

90.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth
at length herein.

91.     The Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §
1692f(1) by their actions, which include, but are not limited to, the collection of an amount that
is not permitted by law.

92.     As a result of these actions taken by the Defendants, Plaintiffs have incurred
actual damages.

93.     Plaintiffs are therefore entitled to an award of actual and statutory damages
against the Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15
U.S.C. § 1692k.

**COUNT NINE:**
**(Violation of 18 U.S.C. § 1961**
**Racketeer Influenced and Corrupt Organizations Act)**

94.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth
at length herein.

95.     The Defendants and their third party collection law firms across the country (including Kramer, Linkie & Taylor, LLC and Glasser and Glasser, P.L.C.) constitute an "enterprise" as defined by 18 U.S.C § 1961, as distinct corporations or legal entities.  In addition, on information and belief, Plaintiffs alleges that Defendants worked with third-party attorneys and other persons to help them create the false affidavits and procedures alleged herein, drafting language that the Defendants and these attorneys and other persons knew would be interpreted incorrectly by consumers and courts around the country.  The affidavits were designed to be misinterpreted.  Such conduct was not simply unethical, but was criminal as well.

96.     All of these law firms and each Defendant were engaged for a common economic purpose of enabling the collection of consumer accounts purchased by Cavalry.

97.     Further, the law firms and the Defendants existed as a collection enterprise outside the function of creating and causing to be presented to courts the fraudulent collection affidavits.  That is, they were not associated with one another merely for the purpose of creating and using the affidavits.

98.     The collection law firms are separate entities and each operates in its own self-interest.  They are organizationally structured in a defined set of relationships and roles and are so engaged for an ongoing continuous business relationship.

99.     The racketeering proceeds obtained by Defendant CPS as a result of the activities of the enterprise flowed through Defendant CPS, to Defendants SPV I and SPV II, and ultimately to Defendant Cavalry.  The proceeds were also used by each such person in continued furtherance of the enterprise, including, but not limited to continuing to pay the salaries of the employees who continued to sign and transmit the affidavits through the mail, as well as the salaries of those who supervised them and directed their actions.

16

100.    The enterprise had an effect on interstate commerce. The transmission of the false affidavits through the United States mail system for re-transmission by the local collection firms (again back through the United States mail system) to consumers and various state courts affected interstate commerce. The transmission of the racketeering proceeds back to the Defendants by use of the United States mail system or via electronic wires also affected interstate commerce. Its consumer targets are scattered across the country. Court fees are paid across the country, and judgments are then taken and enforced in many states, including the Commonwealth of Virginia.

101.    In their enterprise, the Defendants engaged in a pattern of racketeering activity. It continues to date and will be repeated again and again in the future to the detriment of Virginia consumers.

102.    The conduct and actions of the Defendants as alleged herein – creating fraudulent affidavits for use in collection lawsuits – violated the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343.  They involved an ongoing scheme to defraud consumers and courts, and they used both the mails and the interstate wires.

103.    Defendants used this practice with respect to numerous affidavits that it caused to be filed in General District Courts across the Commonwealth of Virginia for years. Plaintiffs' counsel has reviewed the actual court files from dozens of cases filed by the Defendants, and all of these contain the same fraudulent affidavits.

104.    Further, Defendants and the enterprise follow the same unlawful procedures nationwide for the same purposes, and with the same results, victims and methods of committing the offense alleged herein.

105.    Both the Plaintiffs and the General District Courts relied on the fraudulent

affidavits.

106.    Plaintiffs were injured as a result of the Defendants' violations of 18 U.S.C. § 1962 and are entitled to treble their actual damages, the cost of this suit, and reasonable attorney's fees.

107.    Plaintiffs also seek an injunction ordering the Defendants to divest themselves of any interest in any enterprise pled herein, including the receipt of racketeering profits; prohibiting the Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

### COUNT TEN:
### (Virginia Abuse of Process)
### All Defendants

108.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

109.    Defendants' filing of the state court collection lawsuit and improper use of the affidavits was accomplished with the improper motive and purpose of obtaining a judgment on a debt that it could not confirm or know was actually owed by the Plaintiffs and was accomplished through the improper use of a false affidavit as means to circumvent the impossible burdens faced if they actually had to prove an indebtedness.

110.    Defendants conducted themselves in this manner with intent to defraud and with legal and actual malice as to the Plaintiffs and to general district courts.   The Plaintiffs are therefore entitled to and each Defendant is obligated to pay punitive damages.

111.    As a result of the Defendants' civil conspiracy, the Plaintiffs suffered actual damages in the form of economic injury. They also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress

18

over the subject debts.

WHEREFORE, Plaintiffs demand judgment for compensatory, statutory, punitive and treble damages against the Defendants; for declaratory and injunctive relief pursuant to RICO; for their attorney's fees and costs; and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**CHAUNA CRAWLEY** and
**BARBARA WOODSON**


By_____/s/_____
Of Counsel

MATTHEW J. ERAUSQUIN, VSB No. 65434
JANELLE E. MASON, VSB No. 82389
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone:     (703) 273-7770
Facsimile:     (888) 892-3512
matt@clalegal.com
janelle@clalegal.com

LEONARD A. BENNETT, VSB No. 37523
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA  22601
Telephone:     (757) 930-3660
Facsimile:     (757) 930-3662
lenbennett@clalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of August, 2012, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark R. Colombell
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel:    (804) 698-6251
Fax:    (804) 780-1813
mcolombell@t-mlaw.com

Robert R. Musick
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Tel:    (804) 649-7545
Fax:    (804) 780-1813
bmusick@t-mlaw.com

*Counsel for the Defendants*

_____/s/_____
Janelle E. Mason, VSB No. 82389
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
janelle@clalegal.com
