UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHAUNA CRAWLEY, et al.,                    )
                                           )
        Plaintiffs                         )
                                           )
v.                                         )   Case No. 3:12cv252
                                           )
CAVALRY PORTFOLIO SERVICES, LLC, et al.   )
                                           )
        Defendants.                        )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Cavalry Portfolio Services, LLC ("CPS"), Cavalry Investments, LLC ("CI"), Cavalry SPV I, LLC ("SPV I"), and Cavalry SPV II, LLC ("SPV II") (collectively the "Defendants"), submit the following memorandum in support of their motion to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6).

## I.   INTRODUCTION

On April 5, 2012, the plaintiff, Chauna Crawley ("Crawley"), filed a Complaint against CPS alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA"). Crawley subsequently filed an Amended Complaint (the "Amended Complaint"). The Amended Complaint adds Barbara Woodson ("Woodson") as a co-plaintiff and CI, SPV I, and SPV II as additional defendants. The causes of action advanced by Crawley and Woodson arise from the Defendants' attempts to collect money owed under two separate and distinct credit relationships.

The Amended Complaint alleges causes of action under the FDCPA, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and a Virginia common law claim for abuse of process.

## II.  FACTUAL ALLEGATIONS

CI, CPS, SPV I, and SPV II are Delaware limited liability companies with their headquarters and principal places of business located in Valhalla, New York. (Am. Compl. ¶¶ 4-7.) The Defendants have established relationships with many different debt collection law firms in the country.[1] (Am. Compl. ¶ 22.)  The law firms are paid a contingency percentage of recovery, and they exercise no control over any Defendant nor do they submit to control over their own practices by the Defendants. *Id.* The single and principal business purpose of each Defendant is the collection of debts. (Am. Compl. ¶ 14.) Each Defendant uses various instrumentalities of interstate commerce and the mails in the business for which the principal purpose is the collection of debts. *Id.*

### A.  Facts Related to Crawley

A Warrant in Debt (the "Crawley Warrant in Debt") was filed against Crawley in the New Kent General District Court. (Am. Compl. ¶ 31.) A copy of the Crawley Warrant in Debt and its attachments is attached hereto as *Exhibit 1.*[2] Crawley alleges that the Defendants:

(1) submitted a false affidavit, misrepresenting that the affiant had personal knowledge of the account and had reviewed the account records, along with the Crawley Warrant in Debt;

(2) attached a "Summary Screen" to the Crawley Warrant in Debt, representing that the balance owed was comprised of principal only and included no prejudgment interest; and (3) mailed a

---

[1] The Amended Complaint refers throughout to the Defendants collectively without attributing any specific action to either of the distinct defendants. Thus, it is not clear who the Plaintiffs contend are actually taking the actions complained of.

[2] The Crawley Warrant in Debt and the Woodson Warrant in Debt are integral to the Amended Complaint and are relied upon throughout. "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint . . . .' *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. Va. 2004).

copy of the Crawley Warrant in Debt to Crawley, including copies of the affidavit and the Summary Screen. (Am. Compl. ¶¶ 32-34.)

Crawley alleges that the Defendants informed her that if she agreed to a payment plan and made the first payment before the court date, they would not take judgment against her and she would not have to attend the hearing. (Am. Compl. ¶¶ 36-37.) Crawley made a payment to the Defendants on December 2nd and did not appear at the return date, where the Defendants took judgment against her. (Am. Compl. ¶¶ 38-39.) Crawley further contends that the Defendants failed to notify the court of Crawley's payment and took judgment in the full amount of $1,605.24. (Am. Compl. ¶ 40.)

### B. Facts Related to Woodson

A Warrant in Debt was filed against Woodson (the "Woodson Warrant in Debt") in Henrico County General District Court. (Am. Compl. ¶ 49.) A copy of the Woodson Warrant in Debt and its attachments is attached hereto as *Exhibit 2*. The Woodson Warrant in Debt sought judgment against her in the amount of $1,855.54, with interest set at 6% from the date of judgment until paid, judgment costs of $58.00 and $0.00 in attorney's fees. (Am. Compl. ¶ 50.) Woodson alleges that the Defendants: (1) submitted a false affidavit along with the Woodson Warrant in Debt, misrepresenting that the affiant had personal knowledge of the account and had reviewed account records; and (2) mailed a copy of the Woodson Warrant in Debt to Woodson, including a copy of the affidavit. (Am. Compl. ¶¶ 51-52.)

Woodson contends she called the Defendants and was told that if she agreed to a payment plan and made an additional immediate payment, they would drop the lawsuit and not seek judgment against her. (Am. Compl. ¶¶ 53-54.) Woodson entered into a payment plan whereby

3

she agreed to pay $255.54 on the 28th of each month, beginning in February, and she made a payment of $1,000 in early January. (Am. Compl. ¶ 55.)

On January 30, 2012, Woodson attended the court hearing where the judge continued the matter until April 9, 2012 and stated that she owed a remaining balance of $855.54. (Am. Compl. ¶ 57.) Woodson alleges that: (1) the Defendants automatically withdrew $251.83 from her bank account for the months of February and March; (2) the case was continued again until June 18, 2012; (3) the Defendants withdrew $251.83 for the months of April and May; (4) as of June 15, 2012, Woodson had paid the Defendants $2,007.32; and (5) she contacted the Defendants and was told that she owed roughly $500 in attorney's fees and that they would deduct money for the months of June and July. (Am. Compl. ¶¶ 58-60.)

## III.   STANDARD OF LAW

A defendant may move the court to dismiss a cause of action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Under the motion to dismiss standard, well plead factual allegations must be accepted as true. *See Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).

The United States Supreme Court advised that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).

Expanding on *Twombly*, the United States Supreme Court held in *Ashcroft v. Iqbal*, 129 S. Ct 1937, 173 L. Ed. 2d 868 (2009) that:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (citation omitted.) A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* [*Twombly*], at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* [*Twombly*], at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets                                                                  omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* [*Twombly*], at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* [*Twombly*], at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 129 S. Ct. 1937, 1950 (U.S. 2009).

A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Thus, to survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Amended Complaint must contain more than labels and conclusions and must be plausible on its face.

IV.   ARGUMENT

The Amended Complaint should be dismissed for failing to state a claim: (1) under RICO; and (2) for abuse of process.

### A. The Amended Complaint fails to state a claim under RICO.

The Plaintiffs lack standing to prosecute a civil RICO claim and they have failed to allege a *prima facie* case for a civil RICO claim. Civil RICO claims premised on allegations of fraudulent conduct are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). To state a claim under RICO:

> a private RICO plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima. S.P.R.L, v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). "Plaintiff must additionally show that (5) he was injured in his business or property (6) by reason of the RICO violations. The injury and causation components are viewed as standing requirements." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 396 (E.D. Va. 2003) (citing *Sedima*, 473 U.S. at 496-97).

*Field v. GMAC LLC*, 660 F. Supp. 2d 679, 686 (E.D. Va. 2008).

### i. The Amended Complaint does not allege facts to support the conclusion that each Defendant engaged in a pattern of racketeering activity.

To succeed on a civil RICO claim the Plaintiffs must allege that <u>each</u> RICO defendant committed at least two acts of racketeering activity within a ten-year period. *Caballero v. Am. Mortg. Network*, 1:11-cv-622, 2011 U.S. Dist. LEXIS 87210, 13-14 (E.D. Va. Aug. 8, 2011); 18 U.S.C. § 1961(5). The Plaintiffs contend that the Defendants committed both mail fraud and wire fraud. "The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme. *See Pereira v. United States*, 347 U.S. 1, 8, 98 L. Ed. 435, 74 S. Ct. 358 (1954)." *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. Va. 1996). Similarly, wire fraud involves the use of wire, radio or television in furtherance of a scheme to defraud. 18 U.S.C. § 1343.

The Amended Complaint alleges that:

> 100. The enterprise had an effect on interstate commerce. The transmission of the false affidavits through the United States mail system for re-transmission by the local collection firms (again back through the United States mail system) to consumers and various state courts affected interstate commerce. The transmission of the racketeering proceeds back to the Defendants by use of the United States mail system or via electronic wires also affected interstate commerce. Its consumer targets are scattered across the country. Court fees are paid across the country, and judgments are then taken and enforced in many states, including the Commonwealth of Virginia.
>
> . . .
>
> 102. The conduct and actions of the Defendants as alleged herein – creating fraudulent affidavits for use in collection lawsuits – violated the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. They involved an ongoing scheme to defraud consumers and courts, and they used both the mails and the interstate wires.

(Am. Compl. ¶ 100, 102.)

Ignoring the speculation and conjecture that permeates the Amended Complaint, the factual allegations make clear that CPS and SPV I filed suit not for any impermissible purpose, but to collect on a valid debt. CPS sued Crawley to collect the debt she owed. SPV I sued Woodson to collect the debt that she owed. Tellingly, neither of the Plaintiffs denies owing the debts. Alleging, "upon information and belief," that the affiants testified falsely or erroneously in their affidavits does not meet either *Twombly*, *Iqbal*, or FED R. CIV. P. 9(b) standards for pleading the predicate acts of mail or wire fraud.[3]

Not only do the Plaintiffs fail to allege with any specificity which defendant they contend violated the mail fraud and wire fraud statutes, there are no allegations that either CI or SPV II took any collection related actions at all. The Plaintiffs contend merely that CI and SPV II are part of the "enterprise," which is insufficient under FED R. CIV. P. 9(b).

---

[3] The Amended Complaint misrepresents the contents of the affidavits. The affiants simply stated that they had access to the records maintained by the applicable entity and that based on review of those records, the information regarding the debtor was accurate.

7

As the court noted in *Caballero*, each RICO defendant must have committed at least two predicate acts for civil RICO liability to attach. *Caballero*, 2011 U.S. Dist. LEXIS 87210, 13-14; 18 U.S.C. § 1961(5). The Amended Complaint alleges only a single act of using the mail system with the specificity required under FED R. CIV. P. 9(b). Similarly, the Amended Complaint lacks any specific allegation that any Defendant used a wire, radio, or television in connection with any action taken against either of the Plaintiffs. Therefore, the Amended Complaint fails to plead with specificity even a single predicate act of wire fraud and the RICO claim must be dismissed.

The Amended Complaint fails to make a prima facie case for a civil RICO claim predicated on mail fraud and wire fraud and must be dismissed.

### ii. The Plaintiffs have not been injured in their business or property as a result of any alleged RICO violation and therefore lack standing to pursue a civil RICO claim.

RICO permits "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c). Both the United States Supreme Court and the Fourth Circuit Court of Appeals have held that a RICO plaintiff must prove more than a "but for" causation link between the alleged RICO violation and the plaintiff's injuries. The United States Supreme Court first stated in 1985 that a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). Several years later, the Supreme Court expanded on its reasoning for the standing requirement.

> This language [18 U.S.C. § 1964(c)] can, of course, be read to mean that a
> plaintiff is injured "by reason of" a RICO violation, and therefore may recover,
> simply on showing that the defendant violated § 1962, the plaintiff was injured,
> and the defendant's violation was a "but for" cause of plaintiff's injury. This

construction is hardly compelled, however, and the very unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that RICO should not get such an expansive reading.

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-266 (1992) (internal citation omitted).

A civil RICO plaintiff relying on the predicate acts of mail or wire fraud must prove detrimental reliance on the alleged fraud and damages that are proximate to the detrimental reliance to prevail. When discussing the requirement for proximate causation in relation to the alleged predicate acts in a RICO claim, the Fourth Circuit in *Chisholm* held that:

> [I]t is not enough that a civil RICO plaintiff prove that, but for the defendant's violation, he would not have been injured; he must also show that the violation *proximately* caused the harm. [*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992)]; *Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir. 1988). The pertinent inquiry in determining the existence of proximate, or "legal" cause, is "whether the conduct has been so significant and important a cause that the defendant should be held responsible." *Brandenburg* at 1189, *quoting* Prosser & Keeton, *Torts*, § 42 p. 272 (5th ed. 1984).
> . . .
> [W]here the predicate act giving rise to civil liability under RICO was alleged to have been mail fraud, prospective plaintiffs must, in order to demonstrate their standing to sue, plausibly allege both that they detrimentally relied in some way on the fraudulent mailing, and that the mailing was a proximate cause of the alleged injury to their business or property.
> . . .
> [A] showing of reliance on the predicate act of fraud ensures the existence of a "direct relation between the injury asserted and the injurious conduct alleged." [*Caviness v. Derand Resources Corp.*, 983 F.2d 1295, 1305 (4th Cir. 1993)] *quoting Holmes*, 503 U.S. at 268; *see also Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 264 (4th Cir.) (remanding for, inter alia, resolution of reliance issue), *cert. denied*, 130 L. Ed. 2d 283, 115 S. Ct. 323 (1994).

*Chisolm*, 95 F.3d at 336-37.

In a similar case alleging mail fraud for sending allegedly fraudulent affidavits as a predicate act for a civil RICO claim, the Hon. James C. Cacheris, United States District Judge for the Eastern District of Virginia, Alexandria Division, declined to find any detrimental reliance or

proximate causation for injuries. In *McMurtry v. Brasfield*, 654 F. Supp. 1222 (E.D. Va. 1987),

the RICO plaintiffs alleged that the sending of affidavits through the interstate mail system in

connection with a custody dispute constituted the predicate act of mail fraud.

> Plaintiffs essentially argue that letters and an affidavit sent through the mail in
> connection with an ongoing custody dispute constitute mail fraud. The court does
> not feel that Congress intended such action to be encompassed within the mail
> fraud statute. Such an interpretation would chill the ability of attorneys to
> adequately and zealously represent their client's interest in pending litigation. As
> stated by the court in Spiegel v. Continental Illinois Nat. Bank, 609 F. Supp.
> 1083, 1089 (N.D. Ill. 1985), aff'd, 790 F.2d 638 (1986), cert. denied, 479 U.S.
> 987, 107 S. Ct. 579, 93 L. Ed. 2d 582 (1986), in discussing this very issue:
> Congress could not have intended that the mail fraud statute sweep up
> correspondence between attorneys, dealing at arm's length on behalf of their
> parties, concerning an issue in pending litigation . . . Subjecting the letters in issue
> to the mail fraud statute would chill an attorney's efforts and duty to represent his
> or her client in the course of pending litigation. It also would, as it did here, give
> birth to collateral suits.

*Id.* at 1225-26.

Here, as was the case in *Brasfield*, two of the Defendants, through their attorneys, caused

a copy of a Warrant in Debt to be served on the Plaintiffs in connection with ongoing litigation.

Just as mailing the affidavits in *Brasfield* did not cause any injury to the plaintiffs there[4], mailing

the Warrants in Debt here did not cause injury to either Plaintiff. The Plaintiffs breached their

respective contractual obligations to repay money they borrowed. This breach of contract led to

the attempted enforcement of the contractual terms through legal proceedings.[5]

---

[4] The court in Brasfield noted that it was not the sending of the affidavits that caused injury to the plaintiffs, but the removal of their son from the state.

[5] Personal injuries, such as emotional distress, are not compensable under RICO. *McMurtry v. Brasfield*, 654 F. Supp. 1222, 1225 (E.D. Va. 1987); *Bast v. Cohen, Dunn & Sinclair, P.C.*, 59 F.3d 492, 495 (4th Cir. Va. 1995) (An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to "business or property."); *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992) (The terms "business or property" are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom.)

The civil RICO claim fails because the Plaintiffs did not rely to their detriment on the allegedly fraudulent predicate acts, and because they cannot show proximate causation for their alleged injuries and the predicate acts. Accordingly, the RICO claim must be dismissed.

### B. The Amended Complaint fails to state a claim for abuse of process.

The Complaint fails to allege a *prima facie* case for abuse of process. "To prevail in a cause of action for abuse of process a plaintiff must plead and prove: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" *Montgomery v. McDaniel*, 271 Va. 465, 469, 628 S.E. 2d 529, 531-32 (2006) (citing *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539, 369 S.E.2d 857, 862 (1988)). "The authorities are practically unanimous in holding that to maintain the action there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object – an intentional and willful perversion of it to the unlawful injury to another." *Glidewell v. Murray-Lacy*, 124 Va. 563, 571, 98 S.E. 665 (1919).

Here, the Amended Complaint fails to satisfy either prong of this test. The Plaintiffs do not allege that any Defendant had an ulterior purpose in using any process. Lawsuits were initiated in general district courts to enforce the contractual obligations of the Plaintiffs to pay money owed to their creditors. The purpose of the lawsuits was to collect money owed.

Moreover, the Amended Complaint fails to identify which process it contends was used improperly or what specifically was improper about the use of the unidentified process.

The Amended Complaint fails to allege a cause of action for abuse of process and this claim should be dismissed.

### V.   CONCLUSION

The Plaintiffs have failed to prove standing to prosecute a civil RICO claim and have also failed to allege a prima facie case for a violation of that statute. The Plaintiffs also fail to allege a claim for abuse of process. Accordingly, the claims for RICO and for abuse of process should be dismissed with prejudice.

CAVALRY PORTFOLIO SERVICES, LLC, et al.,

By Counsel

____/s/_____
Mark R. Colombell, VSB No. 48183
Robert R. Musick, VSB No. 48601
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
804.649.7545
804.780.1813 Fax
Email: mcolombell@t-mlaw.com
Email: bmusick@t-mlaw.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I certify that on August 14, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties entitled to receipt thereof, including the following counsel of record:

Matthew J. Erausquin, Esq.
Janelle E. Mason, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Email: matt@clalegal.com
Email: Janelle@clalegal.com

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Email: lenbennett@clalegal.com

___/s/_____
Mark R. Colombell, VSB No. 48183
Robert R. Musick, VSB No. 48601
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
804.649.7545
804.780.1813 Fax
Email: mcolombell@t-mlaw.com
Email: bmusick@t-mlaw.com
*Counsel for the Defendants*