**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| CHAUNA CRAWLEY, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 3:12cv252 |
| v. ) | |
| ) | |
| CAVALRY PORTFOLIO SERVICES, LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
<u>MOTION TO COMPEL ARBITRATION</u>**

COME NOW the Plaintiffs, Chauna Crawley (hereafter "Crawley" or "Plaintiff") and Barbara Woodson (hereafter "Woodson" or "Plaintiff"), by counsel, and for their Opposition to the Defendants' Motion to Compel Arbitration, they respectfully submit this memorandum of law.

**OVERVIEW**

Plaintiffs have alleged this action, by their Amended Complaint, substantially premised upon factual allegations that state:

    20. When Defendants collectively purchase debt portfolios, such as the portfolios that contained each Plaintiff's account, they do not actually purchase anything other than the theoretical claim of ownership. There are no notes assigned, and no contracts are transferred. All that Defendants actually purchase is an electronic list of consumers and their last known addresses with an amount the creditor claims to have been owed. Often the interest rates, dates of birth or social security numbers are not included, and addresses have not been updated.

    21. In fact, though Defendants will often produce what is claimed to be an original cardmember agreement or document containing terms and conditions of a credit card account, these documents are false. However, creditors who do transfer or make available later the "terms and conditions" or cardmember agreements do not provide Defendants the actual agreement or documents for that specific account. Instead, the creditors provide, and the Defendants retain, only a generic sample contract, which they later represent to Courts as the genuine

contract for that specific consumer account.

(Am.Compl. at ¶¶ 20,21).  And yet, in the face of these explicit allegations, Defendants now ask the Court to terminate this case and force the Plaintiff-consumers to "arbitrate" their claims based on Defendants' presentation of such generic and unauthenticated "contract" documents.

Defendants' Motion to Compel Arbitration must be denied, as the Defendants have not met their evidentiary burden of proving a contract between them and the Plaintiffs that commands forced arbitration.  Even if there was such an agreement, Defendants were not signatories to any such contract and were neither intended beneficiaries or protected by equitable estoppel such to bind Plaintiffs to such a restriction.  Finally, even if the Defendants had such a right, they have failed to promptly assert such a requirement and thus would materially prejudice the Plaintiffs in their prosecution of these claims.

## STANDARD OF LAW

Defendants ask the Court to compel arbitration based on what they claim are "true and accurate" copies of credit contracts – the very "contracts" that Plaintiffs were not their own. (Def. Mem. at 1; Am.Compl. ¶¶ 20, 21).  The Defendants' brief then skips ahead to legal explanation as to why such a binding contract might apply to the claims in this case and to Defendants as assignee debt buyers.  And these later issues are obviously a legal impedipent to Defendants' motion.  But foremost, Defendants' motion based upon a set of contracts should be denied because Defendants have entirely failed to prove such contracts.

Defendants of course face a conventional evidentiary burden of proving their case – of proving that a contract exists and what that contract provides.  They must do so under the burdens of a posture asking for summary disposition based on actual evidence.  "Motions to compel arbitration in which the parties dispute the validity of the arbitration agreement are treated as

2

motions for summary judgment. *Shaffer v. ACS Gov't Servs., Inc.,* 321 F.Supp.2d 682, 683–84, 684 n. 1 (D.Md.2004). Therefore, such motions "shall [be] grant [ed] ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a)." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251-52 (D. Md. 2011). *Erichsen v. RBC Capital Markets, LLC,* 7:11-CV-190-FL, 2012 WL 2599965 (E.D.N.C. July 5, 2012) ("As noted above, the standard for deciding a motion to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U .S.C. § 4, is similar to the standard applicable to a motion for summary judgment.")

The Court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir.2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir.2003) (citations and internal quotation marks omitted). *Rose*, 816 F. Supp. 2d at 252. "The party seeking to compel arbitration bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)." *Erichsen v. RBC Capital Markets, LLC*, 2012 WL 2599965 (E.D.N.C. July 5, 2012). In circumstances as *sub judice*, this means that the movant who asks the Court to find as an undisputed material fact that there is a binding arbitration contract between the Parties must actually establish such fact by admissible evidence. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c)(2)." *Erichsen v. RBC Capital Markets, LLC*, 7:11-CV-190-FL, 2012 WL 2599965 (E.D.N.C. July 5, 2012).

Defendants incorrectly suggest that an alleged arbitration contract be interpreted liberally and that the Court should take a preferential treatment to arbitration. But this is not the actual state of the law. Instead, while there is an acceptance of arbitration and support for its liberal use premised upon the F.A.A., this perspective does not apply to the initial question of whether or not there was an arbitration contract in the first place. The Supreme Court of the United States has made clear, that the FAA does not require that arbitration clauses receive more favorable treatment than other contact terms: "[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967) (emphasis added). The Supreme Court has pointed to the FAA's legislative history in reaching this conclusion. "The House Report accompanying the Act makes clear that its purpose was to place an arbitration agreement 'upon the same footing as other contracts, where it belongs.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985), citing H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924). In fact, the Supreme Court has reversed the Fourth Circuit and its holding to the contrary. In *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279 (2002), the Fourth Circuit Court of Appeals had enforced an arbitration clause between an employer and a cook against a federal agency, even though that agency had not been a party to the contract. The Fourth Circuit reached this conclusion because it believed this result was required by "the policy goals expressed in the FAA. . . ." *Waffle House*, 534 U.S. at 284. The U.S. Supreme Court flatly rejected this approach as "inconsistent with our recent cases," explaining that those recent cases

4

had held that "[t]he FAA directs courts to place arbitration agreements on equal footing with other contracts. . . ." *Id*. at 293 (citations omitted).

## THERE IS NO ADMISSIBLE EVIDENCE OF AN ARBITRATION CONTRACT

As Plaintiffs' counsel outlined less formally at the Rule 16(b) conference, there is simply no evidence of a contract binding the Plaintiffs to arbitrate. And despite such early warning and the two weeks of time since, Defendants still have not overcome this failure. Their hutzpah is remarkable. Movants offer nothing signed by the Plaintiffs. The "contracts" offered are generic in identity, state no date of origin and are not in anyway authenticated. They are not even explained – why do Defendants even believe that these documents – their exhibits – represent copies of terms and conditions agreed to by the Plaintiffs? Where did they come from? Who maintains them?

Standing alone, Defendants' motion would fail as it unsupported by any admissible evidence. Plaintiff hereby objects to and asks the Court to strike Defendants' exhibits as lacking any foundation and as hearsay (at best). At worst, Plaintiffs have alleged that Defendants' *modus operando* is to offer false documents to courts claiming that they are actual replicas of contracts to which a consumer had years ago agreed. The proposed exhibits and thus Defendants' entire basis to claim a contractual basis for arbitration by themselves fail to meet the movant's burden under the FAA and Rule 56.

While Plaintiffs could stop here, out of an abundance of caution they do not. Each Plaintiff has also provided an unconditional testimonial declaration that explicitly denies the truthful existence of such "contracts". Plaintiffs' Exhibits "A" and "B".

## EVEN ASSUMING DEFENDANTS' "CONTRACTS", THEY DO NOT APPLY TO DEFENDANTS (DEBT BUYERS)

In addition to the glaring omission of any actual authentic arbitration contract, Defendants also provide no analysis to support their simplistic conclusion that the alleged arbitration clauses would bind Plaintiffs as to these defendants. The clauses themselves plainly do not suggest applicability to Defendants. Each "contract" actually defines the "We" and "Us" to which they would apply and neither includes a debt buyer – a third party at the time of the supposed contract.

The "contract" Defendants attribute to Crawley, allegedly from "Household Bank", defines "We", "us", and "our" to refer solely to "Household Bank (SB), N.A., Las Vegas, Nevada." (Def. Exh. 1 at 1). There is no document or even an explanation that connects this Household Bank entity to Defendants – their purported debt portfolio was purchased from a different entity, HSBC. And while there is a familial connection between Household Bank and HSBC, they are legally distinct entities. Defendants, who would protest fiercely as to viel piercing and corporate formalities if a consumer sued a related, but separate corporate entity, cannot properly ask the Court to ignore these legal distinctions. But as clearly, this "contract" does not include assignees, debt buyers or others within the umbrella of "we" or "us."

Similarly, the Woodson "contract" even if admissible and truthful would not govern Plaintiff's relationship with these Defendants. In contrast to the Household Bank document, the Wells Fargo arbitration provision does more broadly include "assignees" as governed parties. But the question does not end there. It is insufficient to offer the contract as an option to a debt buyer who itself has never contracted to be bound to such provision. *McGinnis v. Bonewicz*, 2012 U.S. Dist. Lexis 23833 (February 2, 2012, C.D. Ill.) (Debt collectors like Defendants are not included in the "we" that may demand arbitration.) In fact, there is no other rational conclusion. If the asserted contracts would actually have included the Defendant debt buyers,

Plaintiffs would have been free to initiate forced arbitration against nonsignatory third parties. Though never having signed or stated an agreement to be bound by such definition of "we" in someone else's (a creditor's) contract, the debt purchasers would be forced to arbitrate. Putting aside the practical import of this concept (Plaintiffs assume that all debt collectors would prefer secret and costly arbitration to real litigation), such a legal outcome is inconceivable. Instead, the debt buyer would easily and successfully assert that it is not bound by a contract that it never signed or accepted. Defendants could thus pick and chose when and against whom they may want to arbitrate. 17 C.J.S. Contracts § 135 ("Mutuality is absent when only one of the contracting parties is bound to perform and the other party remains entirely free to choose whether or not to perform. In other words, mutuality is lacking where the rights of the parties exist at the option of one only. When one party's promised performance depends upon that party's wish, will, or desire or when one party is free to perform or withdraw at its unrestricted pleasure, the promise of that party is illusory and is not sufficient consideration for the other party's promise.")

This Court is certainly familiar with this issue. In *Brantley v. Republic Mortgage Insurance Co.*, the Fourth Circuit considered a similar motion in which the defendant contended that "despite being a non-signatory to the arbitration agreement, its insurance contract is so intertwined with the mortgage and arbitration contracts between the plaintiffs and SouthStar that it should receive the benefit of the arbitration agreement." *Brantley v. Republic Mortgage Insurance Co.,* 424 F.3d 392, 395 (4th Cir, 2005).[1]  On facts directly in line with the present case, the Fourth Circuit rejected the defendant's motion to compel arbitration in a consumer claim, explaining:

---

[1] The Defendants may also contend that they were third-party beneficiaries. This claim was also rejected. *Id*.

> This claim is a statutory remedy under the Fair Credit Reporting Act and is wholly separate from any action or remedy for breach of the underlying mortgage contract that is governed by the arbitration agreement. Although the mortgage insurance relates to the mortgage debt, the premiums of the mortgage insurance are separate and wholly independent from the mortgage agreement. The district court correctly found that the mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims, which are wholly unrelated to the underlying mortgage agreement, to be intertwined with that contract.
>
> *Id.*

As Defendants cannot establish that the Plaintiffs' claims are so "intertwined" that they be entitled to arbitration even though not a party, the motion should properly be denied.

Under the rule of *contra preferentem* any ambiguity in the contract should be interpreted against Household Bank and Wells Fargo and their agents, and in favor of Plaintiffs. Additionally, "the language of a credit card contract, as a contract of adhesion, must be narrowly construed against the creditor as the drafter." *Citibank (SD), NA v. Hauff*, 668 N.W.2d 528, 534, (S.D. 2003). As stated by this Court in *Karnette*, "ambiguity is to be resolved to protect the plaintiffs, who did not choose the language of the credit card agreement." *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F.Supp.2d 640. (E.D. Va., 2006). Such a construction of "we" properly puts the cost of any ambiguity on the party who drafted the agreement.

Because Defendants have not shown they are third-party beneficiaries entitled to enforce the terms of the credit card agreement, they are not entitled to compel Plaintiffs' claims to arbitration.

**DEFENDANTS' ARBITRATION MOTION SHOULD BE DENIED BECAUSE DEFENDANTS HAVE WAIVED ANY RIGHT TO ARBITRATION BY THEIR LITIGATION CONDUCT.**

  **A. A party waives the right to compel arbitration when it substantially utilizes the litigation machinery that to compel arbitration would prejudice the other side.**

8

The standard for waiver in the context of an arbitration motion has been set forth by this Court as follows:

> Indeed, one exception to policy favoring arbitration expressed in the FAA is waiver or default of the right to move to compel arbitration. As the Fourth Circuit has explained:
>
> To further facilitate arbitration, the FAA authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration, "provid[ed] the applicant for the stay is not in default" of that right. 9 U.S.C. § 3. Such default or waiver arises when the party seeking arbitration "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir.1985). However, in concert with other circuits, we have consistently held that because of the strong federal policy favoring arbitration "we will not lightly infer the circumstances constituting waiver." *Am. Recovery Corp.*, 96 F.3d at 95. The party opposing arbitration on the basis of waiver thus bears a "heavy burden." *MicroStrategy[Inc. v. Lauricia]*, 268 F.3d [244] at 251 [(4th Cir.2001)] (internal quotations omitted); *Am. Recovery Corp.*, 96 F.3d at 95.

*Patten*, 380 F.3d at 204 (internal citations truncated for use herein). Thus, it is necessary to determine whether W & A has "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice" the plaintiffs. *See id*.

The plaintiffs argue that W & A's delay in filing its Motion to Compel Arbitration requires denying the motion. However, the Fourth Circuit repeatedly has held that a delay of three months between the filing of a complaint and the filing of a motion to compel arbitration does not alone constitute waiver. *Maxum Founds.*, 779 F.2d at 982 (no prejudice in a delay of three months); *In re Mercury Const. Corp.*, 656 F.2d 933, 939 (4th Cir. 1981) (same); *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330 (4th Cir.1971) (same); see *Patten*, 380 F.3d at 205 (delay of four months not alone prejudicial). Here, W & A only delayed six weeks between the filing of the Amended Complaint and the filing of the Motion to Compel Arbitration. Even if measured from the date the original Complaint was filed, the delay is four months. Such a delay—however measured—is not, standing alone, grounds to find a waiver.

"The movant's participation in litigation activity alone will not suffice [to constitute waiver], as the dispositive question is whether the plaintiffs have suffered any actual prejudice." *Patten*, 380 F.3d at 206. Neither the filing of an answer, counterclaim, *Carolina Throwing*, 442 F.2d at 330, or a declaratory judgment action, *Am. Recovery Corp.*, 96 F.3d at 96, nor responding to motions filed by the non-movant, *Patten*, 380 F.3d at 206, nor pursuing discovery that does not prejudice the nonmovant, *Maxum Founds.*, 779 F.2d at 982, nor decisions on non-dispositive motions such as unrelated state-law claims or

9

> discovery challenges, *MicroStrategy*, 268 F.3d at 250, will, without a greater showing of prejudice, constitute a waiver.
>
> However, "where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987) (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)). By filing its motion for summary judgment, W & A forced the plaintiffs to present their case in the responsive pleading mandated under the Federal Rules of Civil Procedure. In doing so, plaintiffs argue, W & A got a full view of the plaintiffs' case, which enabled W & A to reassess its chances of winning the case and to revise its litigation strategy. Having obtained this strategic advantage, plaintiffs' argue, W & A then shifted strategies and moved to compel arbitration. It did not even file a reply to the plaintiffs' response to the summary judgment motion.
>
> In *Fraser*, the Fourth Circuit found that Fraser, the nonmovant, was prejudiced where Fraser "had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss." *Id.* (emphasis added). The district court had granted in part Merrill Lynch's partial motion for summary judgment and, due to delays in pre-trial proceedings, had reset trial dates twice before Merrill Lynch filed the motion to compel arbitration. *Id.* On those grounds, the Court of Appeals held that Fraser had been prejudiced and, therefore, Merrill Lynch had waived its right to move to compel arbitration. *Id.*

*Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F.Supp.2d 640, 647-49. (E.D. Va., 2006). The above legal standard was recently reiterated and applied by the Fourth Circuit when it upheld a denial of a motion to compel arbitration. *See Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009).

> **B.     By filing their Motion to Dismiss, Defendants have already submitted this matter on the merits and caused prejudice to Plaintiffs.**

Defendants filed their Motions to Dismiss and affirmatively asked this Court to rule on all the claims. Because of this motion and as required by the Federal Rules of Civil Procedure, Plaintiffs prepared and filed an Opposition Memorandum. Because of the nature of this Fair Debt Collection Practices Act (FDCPA) case, the Motion to Dismiss filings necessarily revealed Plaintiffs' theory of the case and arguments in support of liability.

10

After these Motions to Dismiss were fully briefed, Plaintiffs were put at risk of having this Court agree with Defendants, and Defendants had the benefit that this risk might be realized. Most importantly, Defendants have not withdrawn their Motion to Dismiss.

By seeking a dispositive motion, Defendants forced Plaintiffs to reveal their theory of the case and their supporting authorities. They received further information in this process that would not be available to them in arbitration. Compelling arbitration would unfairly prejudice the Plaintiffs.

## CONCLUSION

For the reasons stated above, the Defendants' Motion should be denied.

Respectfully submitted,
**CHAUNA CRAWLEY** and
**BARBARA WOODSON**

By _____/s/_____
Of Counsel

MATTHEW J. ERAUSQUIN, VSB No. 65434
JANELLE E. MASON, VSB No. 82389
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com
janelle@clalegal.com

LEONARD A. BENNETT, VSB No. 37523
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA 22601
Tel: (757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com

**CERTIFICATE OF SERVICE**

       I hereby certify that at approximately 1:00 a.m. on this 29th day of August, 2012, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark R. Colombell
THOMPSON MCMULLAN, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel:   (804) 698-6251
Fax:   (804) 780-1813
mcolombell@t-mlaw.com

Robert R. Musick
THOMPSON MCMULLAN, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel:   (804) 649-7545
Fax:   (804) 780-1813
bmusick@t-mlaw.com

John B. Thompson
THOMPSON MCMULLAN, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel:   (804) 698-6202
Fax:   (804) 780-1813
jthompson@t-mlaw.com

*Counsel for the Defendants*

                                                    /s/
                                  LEONARD A. BENNETT, VSB No. 37523
                                  *Counsel for the Plaintiffs*
                                  CONSUMER LITIGATION ASSOCIATES, P.C.
                                  763 J. Clyde Morris Blvd, Suite 1-A
                                  Newport News, VA 22601
                                  Tel:   (757) 930-3660
                                  Fax:   (757) 930-3662
                                  lenbennett@clalegal.com