IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| CHAUNA CRAWLEY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 3:12cv252 |
| v. | ) | |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND COSTS AGAINST ALL DEFENDANTS**

Plaintiffs Chauna Crawley and Barbara Woodson, by counsel, respectfully move for an award of attorneys' fees and costs pursuant to Fed. R. Civ. P. 54 and 15 U.S.C. § 1692k. Plaintiffs submit this Memorandum in support of their Motion.

**STATEMENT OF THE CASE**

Plaintiff Crawley initially filed this case against Defendant for claims arising from their violations of the FDCPA. These actions were committed during the course of their effort to take a General District Court judgment against her, and in their attempts to collect on that judgment. Thereafter, Plaintiff Woodson joined Crawley in filing an Amended Complaint against the Defendants alleging various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (or "FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (or "RICO"), and for the Defendants' abuse of process. The Amended Complaint contained allegations of Defendants' specific behavior with respect to the Plaintiffs, as well as their pattern and practice across the state of submitting falsified affidavits to courts across the Commonwealth of Virginia. Faced with this, the Defendants still refused to admit liability and instead attempted to flee to the perceived shelter of arbitration, where these claims would be

litigated in secrecy and Plaintiffs would be denied the right to a trial of a jury of their peers. The Defendants engaged in motions practice, expending additional time and resources for this motion, only to later withdraw it after it became clear that the Plaintiffs had not agreed to arbitrate their claims. They also filed a motion to dismiss which was ripe for hearing at the time of the acceptance of the offer of judgment. Both sides issued discovery to the other. The Defendants objected to nearly every request and withheld relevant documents based on specious assertions of privilege as it related to their outside Virginia collection mills.

At all times during the pendency of this case, Plaintiffs voiced their willingness to settle the case and made specific opening dollar demands early in the case, only to be rebuffed by the Defendants. They seemed not to understand the seriousness of the liability they faced until after significant briefing on their motions was completed. Indeed, it was not until the end of September that Defendants submitted the offer of judgment to the Plaintiffs that was ultimately accepted. Even this was a difficult decision. The Plaintiffs were prepared to prove through a senior handwriting expert employed by the Department of the Treasury that the Defendants have submitted forged affidavits to courts around the Commonwealth of Virginia to obtain default judgments against consumers. These judgments were reported within the Plaintiffs' credit files and caused actual damage to them that arguably exceeded the amounts of the offers of judgment. While Plaintiffs' claims likely may have had considerably greater value after the Defendants' motion to dismiss was ruled upon, the Plaintiffs nonetheless accepted the offers. In short, in the current posture, there is no question that Plaintiffs have completely prevailed on their RICO, FDCPA and abuse of process claims.

Plaintiffs submit that given the serious nature of this case, its progression and ultimate success, the attorneys' fees and costs requested are reasonable and were necessarily incurred in the prosecution of the matter.

### ARGUMENT

#### I. Standard for Awarding Attorneys' Fees

The Fair Debt Collection Practices Act, at 15 U.S.C. § 1692k provides in pertinent part that "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).

Because an award of attorneys' fees is mandatory under the federal consumer protection statutes, so long as the Plaintiff is "successful", the fees must be awarded. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n.5 (1978); *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370 (D.C. Cir. 1980). A plaintiff is considered successful if he/she succeeds on any significant issue in litigation that achieves some of the benefit the party sought in bringing the suit, even if other state and federal claims are not successful. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Postow*, 627 F.2d 1370. Thus, a prevailing plaintiff must obtain at least some relief on the merits of his/her claim and obtain an enforceable judgment against the defendant in order to qualify as a successful party. *Hensley*, 461 U.S. at 433; *see also Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Because the Defendants have made offers of judgment that were accepted and because judgment was subsequently entered against the Defendants, Plaintiffs have succeeded on their claims and therefore are entitled to recover an award of reasonable attorneys' fees and costs.

#### II. Attorney's Fees Are to be Calculated Pursuant to the Lodestar Formula

The United States Supreme Court has explained the calculation for an award of reasonable attorneys' fees as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley*, 461 U.S. at 433; *see also People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). Although this decision, and others cited hereinafter, arose in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, these criteria are equally applicable here. In fact, the Supreme Court explicitly stated as much in *Hensley*: "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7. The Supreme Court has further stated that similar language among fee-shifting statutes is "'a strong indication' that they are to be interpreted alike." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2 (1989) (quoting *Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir. 1988).

In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), the Fourth Circuit held that, when determining the amount of attorneys' fees to be awarded, a district court must consider the twelve factors specified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Barber*, 577 F.2d at 226. In *Barber*, the Fourth Circuit held that the following factors were to be considered when calculating attorneys' fees:

(1) the time and labor expended;
(2) the novelty and difficulty of the questions raised;
(3) the skill required to properly perform the legal services rendered;

4

(4) the attorney's opportunity costs in pressing the instant litigation;
(5) the customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;
(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). Under *Grissom,* the court should (1) calculate the lodestar which is the product of the "reasonable hourly rate" by the "hours reasonably expended," in light of the Johnson/Barber factors; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff. *Bradford v. HSBC Mortg. Corp.*, 859 F. Supp. 2d 783, 789 (E.D. Va. 2012) (internal citations omitted).

In this case however, the Plaintiffs were entirely successful on their claims and the Court should find that an award for attorneys fees and costs sought herein is reasonable. Plaintiffs will address each of the factors in turn:

*A.     The time and labor required*

A good portion of the initial time expended in the case was spent gathering information regarding the Defendant's abusive debt collection practices regarding the Plaintiffs. Plaintiffs and their counsel spent a significant amount of time investigating the Defendant's behavior before drafting and filing the complaint with this Court. Plaintiffs gathered handwriting samples from 25 cases filed around the country by the Defendants in which a "Stephanie Cappelli" signature was used. The differences between these signatures were glaring, as later confirmed by the Plaintiff's handwriting expert, currently employed by the Department of the Treasury. Indeed, the signatures tend to show that at least *three other natural persons* signed Ms.

Cappelli's name to her affidavits. While Ms. Cappelli could not possibly have had "personal knowledge" of the facts stated in her affidavits, even if she had signed them personally, Plaintiffs were able to quickly assemble evidence that tends to show that the Defendants engaged in a large scale "affidavit robosigning" campaign. A significant portion of the time spent in the later stages of this case was necessary to draft Plaintiffs' motion for partial summary judgment (which would have disposed of many of the FDCPA claims), and then to respond to Defendants' motion to dismiss and their motion to compel arbitration, the latter of which was ultimately withdrawn by the Defendants. The time expended in this matter is appropriate to the representation of a consumer plaintiff and was modest under the circumstances due to counsel's experience in consumer protection litigation. *Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D. Va. 1998) (finding that "there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases"); *Jones v. Robert Vest*, 2000 U.S. Dist. LEXIS 19026, *10 (E.D. Va. 2000) (finding that in a consumer case "the time spent on legal research would have conceivably been much greater for an attorney with less experience in this area of consumer protection law"). This point is especially true in this case. Plaintiffs' counsel had to devote a relatively modest amount of time to new legal research, if much at all, which provides further support for their hourly rate as discussed further herein.

Plaintiffs' counsel has considerable experience in the area of consumer protection work and in federal litigation, devoting the entirety of their practice to assisting consumers of modest means. While Plaintiffs' counsel was additionally responsible for handling the managerial functions (and often administrative tasks) of their comparatively small firm, they perform many of the tasks required to prosecute a case on their own. As explained with approval in *Bailey v. District of Columbia*, 389 F. Supp. 888, 891 (D.D.C. 1993):

> [A]ttorneys like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle such [clerical] tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.

*See also Withers*, 997 F. Supp. at 740; *Morgan v. Credit Adjustment Bd.*, 1998 U.S. Dist. LEXIS 8135, at *5 (E.D. Va. May 18, 1998). The time spent by Plaintiffs' counsel to successfully complete this litigation is therefore reasonable and provides no reason to adjust the lodestar downward.

**B.     *The novelty and difficulty of the questions***

Most of the questions presented by this case were not new issues for this Court. Although this Court has been presented with many consumer cases in the past several years and Plaintiffs' counsel has brought several similar cases before this Court, including the *James v. Midland* matter recently, these facts should not result in a downward adjustment of the lodestar amount. Even if the case is entirely straightforward, the lodestar amount may not be reduced. *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). However, this case also included a significantly more complex civil RICO claim, which requires additional preparation and time. Plaintiffs involved their expert, Professor Blakey, who wrote the text of the statute itself and is familiar to this court. He provided significant assistance with the Defendants' attacks on Plaintiffs' RICO claims and the briefing necessitated by the Defendants' motion. In the context of consumer cases, civil RICO claims, at least in this Circuit, provide more novel questions and issues than the more commonly litigated FDCPA claim. This factor clearly supports the lodestar requested.

**C.     *The skill requisite to perform the legal services properly***

Plaintiffs' counsel knows of only a few attorneys in Virginia who are able and willing to litigate consumer protection cases. Most attorneys do not recognize the legal issues involved in such cases, and members of the Virginia Bar generally reject clients' requests for representation in consumer protection cases. This is especially true for more complex claims such as Plaintiffs' civil RICO claim. Additionally, the active and successful litigation of civil claims in federal court, particularly in the Eastern District of Virginia's "rocket docket", requires a higher skill level than litigation in a less vigorous forum. Plaintiffs' counsel not only has the skill and knowledge to perform these services properly, they applied such skill and knowledge in this case resulting in a prevailing judgment.

### D.  *The preclusion of other employment*

The time spent on this case against the Defendants was not, and could not be, spent at the same time as on litigating other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent a plaintiff in a contingency or fee shifting case in federal court. The time Plaintiffs' counsel expended on their behalf was time that would have been spent on other matters had this case not been filed or litigated. Additionally, the time spent information gathering information or interviewing the Plaintiffs precluded Plaintiffs' counsel from spending that time evaluating other potential clients or cases.

It is appropriate in considering what a reasonable fee would be to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiffs' counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion. Thus, some consumers did not receive the same help provided to these Plaintiffs. Counsel does not have the resources of a large firm and must review, select and turn down cases accordingly.

It is clear that the time spent on this case would have been expended on other matters, and therefore this factor provides no basis for any adjustment of the lodestar.

### E.     *The customary fee for like work in the community*

Plaintiffs' attorneys' fee request is well within the range of fees charged by attorneys with comparable experience and in a comparable area of practice. Their fee is thus reasonable and represents the market rate for like work in this area, as more fully set forth in the Declaration of Matthew J. Erausquin filed herewith.

The National Law Journal's Annual Law Firm Billing Rate Survey from December 19, 2011 provides a starting point for determining reasonable attorney billing rates. The National Law Journal is a widely respected national legal publication that has surveyed and tracked law firm billing rates nationwide for over ten years. As reflected in the survey, law firm billing rates for partners of various levels in the Washington, D.C. and Northern Virginia market range from $250 per hour to $675.00 or more. See, for example, the entries for Covington & Burling; Dickstein, Shapiro, Morin & Oshinsky; Hogan & Hartson; McGuire Woods; and McKenna, Long & Aldridge. *See Annual Law Firm Billing Rate Survey*, NAT'L L.J., Dec. 19, 2011.

The submitted hourly rate of $375 for an attorney of Mr. Erausquin's skill, experience, and credentials is well within the mid-range of fees charged, particularly given his years of exclusive federal consumer protection practice in both individual and class actions. In 2008, his hourly rate of $350 at the time was submitted as part of a lodestar crosscheck in the *Williams v. LexisNexis* matter, and this court ultimately approved the fee requested. Similarly, Mr. Bennett's submitted rate of $475 per hour is also within the range of acceptable fees for an attorney of Mr. Bennett's skill, experience, and credentials. It has been approved in multiple Eastern District of Virginia cases. He has been litigating consumer cases for nearly two decades and has been

named as a multi-year Virginia Super Lawyer and a Virginia Leader in the Law. Erausquin Decl., Exhibit A. While not previously considered by this Court, it may take judicial notice based on its own experience that the requested rates of $210 and $175 for Ms. Mason and Ms. Nash, respectively, are reasonable. The work that could be performed by them was so assigned, rather than requiring Mr. Erausquin or Mr. Bennett to perform those tasks. Id.

Federal litigation, particularly in the Eastern District of Virginia, is challenging and oftentimes requires an experienced knowledge of complex rules of civil procedures and of evidence. Legal fees for attorneys experienced in this area of work are rightly in the upper echelon of hourly rates, as further discussed below with regard to fee awards in similar cases.

### F. *Whether the fee is fixed or contingent*

In consumer protection cases, the fee is very often contingent—not on the amount of damages, but on award by the court or agreement of the opponent. In a private attorney general Fair Consumer Reporting Act (or "FCRA") case, the sister statute to the FDCPA, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. This is very often the case in actions brought under the FDCPA, where the Plaintiff seeks an award of statutory damages, in absence of fungible harm, to deter future violations of the law.

In *Johnson*, the Court ruled that the fixed/contingent nature of the fee was important because, "[i]n no event . . . should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to an amount." 488 F.2d at 718. However, this portion of the ruling was expressly rejected by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorneys' fees and to hold otherwise would be inconsistent

10

with the statute and its policy and purpose."). Thus, the current state of the law is that the fixed or contingent nature of the fee agreement would not serve to reduce the fee award.

### G. *Time limitations imposed by the client or the circumstances*

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court. In the Eastern District of Virginia, these time limitations are often substantial as the Court is committed to a speedy progression of cases through the litigation process. This factor provides no basis here for any change in the lodestar amount.

### H. *The amount involved and the results obtained*

"[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977) (awarding the Plaintiff the maximum $1,000.00 statutory damages available to him under the Truth in Lending Act). The Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorneys' fees to be awarded in *Yohay v. City of Alexandria Employees Credit Union*, a case involving the FCRA. In rejecting the Defendant's claim urging proportionality, the Fourth Circuit stated:

> Proportionality of attorneys' fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorneys' fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay*, 827 F.2d 967, 974 (4th Cir. 1987). In this case, the Plaintiffs recovered a combined amount of $20,000.00, which clearly exceeds the amount of statutory damages available to them under the FDCPA. By any measure, Plaintiffs were successful in their lawsuit. They prosecuted valid claims upon which they ultimately prevailed. This factor provides no reason for any

downward adjustment of the lodestar, but can provide a basis for an upward adjustment of the lodestar amount.

**I.** *The experience, reputation and ability of the attorney*

The experience, reputation, and ability of Plaintiffs' counsel are reflected in their Declarations. Both Mr. Erausquin and Mr. Bennett have substantial experience with consumer protection actions litigated in federal court and are capable of handling complex consumer litigation. This can provide a basis for an upward adjustment of the lodestar amount.

**J.** *The undesirability of the case*

To counsel's knowledge, there are only a handful of attorneys who practice in the Richmond market who also practice in federal court and in the area of consumer protection law. Of those few attorneys, even fewer litigate cases under the FDCPA and fewer still have experience with RICO claims. This limited access to legal services for consumers is due in the largest part to the undesirability of these cases. The FDCPA is limited to statutory damages of $1,000.00 where there is no actual damage to the Plaintiff, and therefore attracts a limited quantity of attorneys willing to practice in this area of law. Plaintiffs' counsel has chosen this niche area of practice, along with several other consumer protection statutes, and devotes a considerable amount of time to consumer protection without any guarantee of payment. Few attorneys are willing to accept these risks and fewer still would help at all if they were unable to count on a full fee award if successful. Therefore, Plaintiffs' counsel's willingness to take cases such as these, that other lawyers choose to decline, can provide a basis for an upward adjustment of the lodestar amount.

**K.** *The nature and length of the professional relationship with the client*

Ms. Crawley and Ms. Woodson engaged their counsel to litigate their claims against the Defendants after the Defendants sued them each in general district court. Plaintiffs' counsel was retained particularly for pursuit of this claim in federal court. This factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are not ongoing matters, and thus provides neither a basis to increase or decrease the lodestar amount.

**L.**     *Awards in similar cases*

Plaintiffs' attorneys' fee request is within the prevailing market range in this type of representation. *See Blum v. Stenson*, 465 U.S. 886 (1984). The federal courts recognize that fee awards are to mimic the marketplace. Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995); *see also Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). For these reasons, the size of the award sought provides no reason to make any adjustment to the lodestar.

The lodestar amount expended in this case I sThese costs are recoverable in addition to the attorneys' fees. "[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1); *see also* 15 U.S.C. §1692k(a)(3).

Adding the attorney's fee request referenced in Exhibit A in the amount of $68,111.75, together with the costs incurred in the amount of $17,321.04, produces a total request of attorneys' fees and costs in the amount of $85,432.79, excluding the fees and costs expended in the filing of this Motion. Erausquin Decl at 13. Plaintiffs reserve the right to supplement this

time prior to a final award, if a hearing or additional briefing is required. They will, of course, work with the Defendant to attempt to reach a resolution that does not require the expenditure of additional judicial resources.

### III. Plaintiffs Will Seek a Supplemental Award of Attorney's Fees for the Time Expended Litigating Attorney's Fees and Other Matters

The Declarations submitted by Plaintiffs' counsel detail the time expended up through the preparation of this Motion, brief and supporting documentation. The additional time expended for the filing of this Motion and attendance at a hearing, if required, and any other matter will be submitted when work of Plaintiffs' counsel is completed. An award of fees is appropriate for the time expended in pursuing a motion for an award of attorneys' fees. *Kerns v. Consol. Coal Co.*, 247 F.3d 131 (4th Cir. 2001). The time spent pursuing fees is to be awarded so that the fees awarded pursuant to a statute are not diminished. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986); Hyme*s v. Harnett Cnty. Bd. of Ed.*, 664 F.2d 410, 413 (4th Cir. 1981); *Spellan v. Bd. of Educ. for Dist. 111*, 69 F.3d 828, 829 (7th Cir. 1995); *Haitian Refugee Ctr. v. Meese*, 791 F.2d 1489, 1500–01 (11th Cir. 1986); *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979); *David v. City of Scranton*, 633 F.2d 676 (3d Cir. 1980). The principles established in *Hensley v. Eckerhart* also apply to attorneys' fees awarded for litigating attorneys' fees claims. *In re Burlington Northern, Inc.*, 832 F.2d 430, 436 (7th Cir. 1987).

After completion of briefing and a hearing, Plaintiffs' counsel will submit a Supplemental Motion for an Award of Attorney Fees and Declarations in support thereof as necessary.

### CONCLUSION

Plaintiffs hereby move for an award of attorneys' fees and costs in the total amount of $85,432.79 for work performed and costs expended in this matter to date. Further, Plaintiffs

should be awarded the additional attorneys' fees and costs necessitated by this motion, upon the completion of the briefing, any hearings, and other matters required to bring this action to a conclusion.

                                      Respectfully submitted,
                                      **CHAUNA CRAWLEY and**
                                      **BARBARA WOODSON**

                                      By         /s/
                                                Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle E. Mason, VSB No. 82389
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, PC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    703-273-7770
Fax:   888-892-3512
matt@clalegal.com
janelle@clalegal.com

Leonard A. Bennett, VSB No. 37523
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:   (757) 930-3662
lenbennett@clalegal.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 17th day of October, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark R. Colombell
THOMPSONMCMULLAN, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel: (804) 698-6251
Fax: (804) 780-1813
mcolombell@t-mlaw.com

Robert R. Musick
THOMPSONMCMULLAN, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
bmusick@t-mlaw.com

John B. Thompson
THOMPSONMCMULLAN, P.C.
100 Shockoe Slip
Richmond, VA 23219
Tel: (804) 698-6202
Fax: (804) 780-1813
jthompson@t-mlaw.com

*Counsel for the Defendants*

                                          /s/
                                Matthew J. Erausquin, VSB No. 65434
                                *Counsel for the Plaintiffs*
                                CONSUMER LITIGATION ASSOCIATES, PC
                                1800 Diagonal Road, Suite 600
                                Alexandria, VA  22314
                                Tel:    703-273-7770
                                Fax:   888-892-3512
                                matt@clalegal.com